HARDY, Judge.
This is an action in which plaintiff seeks to recover damages to his automobile allegedly resulting from the negligence of defendant’s assured. In answer defendant denied any negligence on the part of its insured and affirmatively averred that the accident was the result of the negligence of the driver of plaintiff’s automobile. After trial there was judgment rejecting plaintiff’s demands, from which he prosecutes this appeal.
On or about September 15, 1952, at approximately the hour of 8:30 P. M., plain *372 tiff’s 1946 Ford convertible, driven, with, his knowledge and consent, by his stepson, Charles B. Bradford, was proceeding west along U. S. Highway 80 in Caddo Parish, Louisiana. At a point near the intersection of a private road leading to a golf driving range on the south of the highway Bradford attempted to pass a 1950 Plymouth sedan, proceeding in the same direction, owned by defendant’s assured, Chester W. Godby, and operated at the time by his minor son, James P. Godby, with the knowledge and consent of the said assured. On trial of the case young Bradford testified that he sounded his horn, pulled into his left highway lane and undertook to make the passing operation; that as the front of his car was about halfway alongside the Plymouth he observed the rear signal lights of the said Plymouth automobile flash, and, immediately thereafter, the driver of the Plymouth turned his car to the left, colliding with the Ford and inflicting the damages for which recovery is claimed. Bradford testified that he was proceeding at a reasonable rate of speed, some 50 miles per hour.
The testimony of young Godby is completely contradictory of that of Bradford. Godby testified that as he approached the turnoff into the private roadway he signaled for his left turn and, in his words, “drifted” over toward the center line of the highway; that the driver of the Ford car apparently turned toward the right-hand lane too quickly and sideswiped his automobile. Godby further testified that before signaling a left turn and making preparation to negotiate the same he made observation to the rear and did not see any vehicles approaching.
For reasons which are hereinafter set forth it is unnecessary to dwell upon the question of negligence, vel non, of Bradford, the driver of plaintiff’s automobile. It is necessary to determine if young Godby was guilty of negligence which contributed to the occurrence of the accident.
It is strenuously urged by counsel for defendant that at best the testimony of the two' eyewitnesses is so directly contradictory as to constitute a “dogfall”. In other words, counsel urges that the testimony of the driver of one car offsets the testimony of the driver of the other and therefore there can be no decision. We cannot accord with this conclusion. We think it is clearly established that young Godby was guilty of negligence in that he failed to see the approach of the Ford automobile which could and should have been observed if, indeed, he made the effort. Additionally he admits that his car radio was in operation, which likely accounts for his failure to hear any horn signal. Finally, his own testimony that he “drifted” his car over to the left in preparation for making the turn across the highway indicates beyond question that he was negligently unaware of the hazard involved in this operation. On all of these counts we think he must be held guilty of negligence. As a physical factor which tends to sustain this conclusion we point-out the location of the point of impact. According to the testimony of the drivers and of the state trooper who investigated the accident, the left front fender of the Godby car struck the right side of plaintiff’s car, the initial point of contact being at or about the vicinity of the right door. With reference to this fact counsel for defendant contends that the same result could have been effected if, as indeed he argues, young Bradford had turned his car too quickly to the right before completing his passage. Although this conclusion is possible, it does not appear to us to be a probable resolution. There is no factual circumstance which would indicate that Bradford began turning back to the right-hand side of the highway when he still lacked a half car length of making clearance of the vehicle he was engaged in passing. To the contrary it appears entirely reasonable to conclude that Godby in his “drifting” operation came across the center line of the highway, though he testified “the left wheels were about on the said line” and turned the left front fender into the body of the passing vehicle which he had completely failed to observe.
Even conceding concurrent negligence on the part of Bradford we conclude that such negligence cannot be imputed to his stepfather, the plaintiff herein.
*373 It is contended on behalf of defendant that young Bradford was a minor living with his mother and his stepfather; that the plaintiff stepfather exercised control over the said minor’s action and conduct; that he stood in loco parentis; that young Bradford was a part of his household and as a result his negligence is imputed tO' the stepfather even as the negligence of a minor child is imputable to the father. In attempting to point the parallel, counsel cites Pancoast v. Cooperative Cab Co., La.App., 37 So.2d 452, reiterating the well-recognized general principle that the father is liable for the negligence of the minor residing with him, and the case of Quintano v. Ibos, 14 La.App. 73, 128 So. 186, 187, in which a stepfather was held liable for the negligence of his minor stepson. However, counsel very fairly points out the obvious fact that Ibos was not only the stepfather of the minor who was guilty of the tort but he was the co-tutor. There is no contention nor is there any ground for a contention in this case that Hay had aiiy tutorial relationship with Bradford.
Reference to the opinion in the Quintano case evidences the fact that the action was predicated upon the authority of Article 2318 of the LSA-Civil Code which reads as follows:
“The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or. unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
“The same responsibility attaches to the tutors of minors!’ (Emphasis supplied.)
The court commented upon the applicability of the quoted article as follows:
“It will be observed that the codal article makes no exception in favor of cotutors, and its language is broad enough to include them.”
Obviously the holding of the court does not constitute authority which would justify the imputation of negligence of a stepson to a stepfather. The article does not establish the factors urged by counsel as the requisites or measures'or'standards for the imputation of liability. The only relationships carrying such imputation as established by the codal article are the father, the mother, tutors of minors. The plaintiff in this case falls in none of these categories. And we think it follows that he cannot be held liable for the negligent acts of his stepson.
There is no dispute as to the quantum of damages, it being established without contradiction that plaintiff expended the sum of $103.37 for repairs.
For the reasons assigned the judgment appealed from is reversed and set aside and there is now judgment in favor of plaintiff, J. M. Hay, and against the defendant, American Motorists Insurance Company, in the full sum of $103.37, with interest thereon at the legal rate from date of judicial demand until paid, together with all costs.